IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA SAPP and <br> JASON SWANSON <br><br> Plaintiffs, <br><br> vs. <br><br> SNUFFER'S RESTAURANTS <br> INCORPORATED d/b/a/ SNUFFER'S <br> RESTAURANT AND BAR, THOMAS J. <br> ROPPOLO, TRUSTEE, RONA <br> ACQUISITIONS, CHRISTOPHER S. <br> CARROLL NUMBER 1, LTD, CSC <br> INVESTMENTS, LLC, PRESTON CENTER <br> WEST, JC, PTC DUNHILL HOLDINGS, <br> LTD., EAGLE SEIKI SALES, LTD 1, <br> ELIZABETH JANE BURKS and GENE A. <br> BURKS, as general partners <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:07-CV-273-M |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated August 23, 2010, before the Court for determination is *Plaintiffs' Motion for Attorneys' Fees*, filed August 3, 2010 (doc. 183). Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED,** in part.

## I. BACKGROUND

This application for attorney's fees arises out of a class action filed by Patricia Sapp and Jason Swanson ("Plaintiffs") against: Snuffer's Restaurants Incorporated ("Snuffers"); Thomas J. Roppolo as Trustee and Rona Acquisitions as owner of the real property where Snuffers Greenville's is located ("Greenville"); Christopher S. Carroll Number 1, Ltd. as owner of the real property where Snuffers Midway is located and CSC Investments, LLC as its general partner ("Midway"); Preston Center West, JV as owner of the real property where Snuffers Preston Center is located ("Preston

Center"); AMREIT SSPF Preston Towne Crossing, LP as owners of the real property where Snuffer's Plano is located, and AMREIT SSPF Preston Towne Crossing GP, LLC as general partner of AMREIT SSPF Preston Towne Crossing, LP ("Plano"); Eagle Seiki Sales, Ltd. 1, as owners of the real property where Snuffers Rockwall is located, and Elizabeth Jane Burks and Gene A. Burks as its general partners ("Rockwall"); Craig Crossing Exchange, 1031 LLC as the owner of real property where Snuffers McKinney is located, and Craig Crossing Exchange LLC as its governing person ("McKinney"); and Town Square Ventures, LP as the owner of the real property where Snuffers Southlake is located, and Western Town Square Ventures I GP, LLC as its general partner ("Southlake"). Plaintiffs alleged that the defendants violated Title III of the Americans with Disabilities Act ("ADA"), the Texas Architectural Barrier Act ("TABA"), and the Texas Human Resources Code ("THRC") by failing to design, construct, and/or own or operate facilities that comply with the ADA Accessibility Guidelines and the Texas Accessibility Standards. They sought compliance with the guidelines and standards and a payment of $100 in damages to each named plaintiff and to each class member for a violation of their civil rights.

Plaintiffs settled with the McKinney, Southlake, and Plano landlords, from whom they received $45,740.00 in attorney's fees, and they entered into a consent decree with the remaining defendants ("Defendants"). Under the consent decree, each Snuffer's restaurant had either complied or would comply with the ADA and the TABA, except the Greenville location where the parties determined that complete compliance could not be readily achieved. The consent decree named Kenneth Carden and Palmer Bailey as class counsel and required Defendants to pay them reasonable and necessary attorneys' fees and costs. It limited the liability of each of the Defendants who is an owner or manager of the real property on which Snuffers is located to 14.28% of the total fees and costs. If Defendants and class counsel could not agree on reasonable attorneys' fees or costs, the

consent decree allowed them to submit the issue to the Court for resolution. Because the parties could not agree, Plaintiffs filed an application for $226,513.51 in attorney's fees and costs. With a timely filed response and reply, the application is now ripe for consideration.

## II. ANALYSIS

Defendants do not dispute Plaintiffs' entitlement to attorneys' fees or the reasonableness of the costs requested. They only dispute the reasonableness and necessity of the fees requested.

**A.  Methodology for Calculating Attorney's Fees**

In adjudicating an attorney's fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co.*, 50 F.3d at 324. In the second step of the lodestar method, a court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).[1] *Riley*, 99 F.3d at 760; *Louisiana Power & Light*, 50 F.3d at 331. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). The most critical factor in determining the

---

[1] The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson*, 488 F.2d at 717-19).

3

reasonableness of an attorney's fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436.

**B.     The Lodestar**

The first step in the lodestar analysis requires a determination of the reasonable number of hours expended by Plaintiffs' counsel, as well as their reasonable hour rate. Plaintiffs offer time records and affidavits in support of their application for $226,513.51 in attorney's fees and costs for the prosecution of this case. (Mot. Br. at 4.) Defendants raise a number of objections to the reasonableness of the attorney's fees requested.

1. <u>Billing Judgment</u>

Defendants first object that Plaintiffs have failed to offer evidence of unbilled time for purposes of assessing billing judgment. (Resp. Br. at 9-10.) Billing judgment refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours. *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996). "Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off." *See Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir.1990). The burden is on the fee petitioners to prove that they exercised billing judgment. *Walker*, 99 F.3d at 770. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Here, there is some evidence that counsel exercised billing judgment. As pointed out by Defendants, eight entries in Carden's time sheets are designated "no charge." Additionally, Plaintiffs explain that they have submitted only reasonable and necessary fees for approval and that

4

counsel wrote off several state law claims and motions found on the docket sheet without making any time slips for them. Counsel has therefore demonstrated an exercise of billing judgment.

2. Administrative Tasks

Defendants object to 0.3 hours of Carden's time and 2.3 hours of Bailey's time as involving administrative work charged at premium rates. (Resp. Br. at 7-8.) In response, Plaintiffs agree to eliminate $301.07 worth of time entries[2] which is more than what Defendants object to. (Reply at 6-7.) The Court should reduce this amount from the total amount requested by Plaintiffs.

Without identifying the specific entries at issue, Defendants also object that tasks such as conferences and strategy sessions with co-counsel, entry of attorney information into "Time Matters,"correspondence with opposing counsel's secretaries, and correspondence to the Court regarding filings should not be billed at premium rates. (Resp. Br. at 7-8.) In the Fifth Circuit, non-legal work such as investigation, clerical work, and compilation of facts and statistics may command a lesser rate. *See Johnson*, 488 F.2d at 717. However, since Defendants do not identify the specific line entries to which they object, they have not shown that the entries are unreasonable. *See HCC Aviation Ins. Grp., Inc. v. Emp'rs Reinsurance Corp.*, 2008 WL 850419, at *7 (N.D. Tex. Mar. 21, 2008). A party challenging the amount of attorney's fees must explain why or how the requested fees are unreasonable. *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997). "Without detailed information explaining why or how the total number of hours or the rates are unreasonable, an objection to a fee request does not constrain the court's discretion." *James v. City of Dallas*, 2005 WL 954999, at*2 (N.D. Tex. Apr. 25, 2005) (citing *No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 501 (5th Cir. 2001); *Wegner*, 129 F.3d at 823).

---

[2] *See* Mot. App., p. 10, entry dated Mar. 2, 2007 ($12.00); p. 13, entry dated Mar. 10, 2007 ($24.00); p. 140, entry dated Feb. 13, 2007 ($82.50), entry dated Feb. 14, 2007 ($52.50), entry dated April 29, 2008 ($22.50); two entries dated Feb 5, 2008 ($40.00 each).

5

### 3. Motion to Certify

Defendants also question why counsel spent more than 26 hours to prepare a motion to certify very similar to motions commonly filed in similar lawsuits. (Resp. Br. at 12.) A review of the 26-page motion shows that the time charged by Plaintiffs is reasonable for the issues discussed and the subject matter covered. Defendants' objection regarding the time spent on the motion to certify should therefore be overruled.

### 4. Duplication of Efforts

Defendants argue that the billing records provided by Plaintiffs represent a duplication of efforts because there was no need in this case for two senior attorneys to work at premium rates. Even assuming that one senior attorney could achieve the same result as two, Defendants have not shown that any meaningful reduction on the total amount of hours expended would be achieved. They have not identified any entries that are duplicative or that could have been avoided. Nor have they identified or work that could have been performed by a less experienced and/or cheaper attorney. Defendants' conclusory assertions alone do want warrant an adjustment on this ground.

### 5. Monitoring Cross-Claims

Defendants argue that the fees incurred in monitoring the cross-claims by the McKinney and Southlake landlords is unreasonable because Plaintiffs failed to formally object to the insertion of the cross-claims into the lawsuit and conceded that a great deal of their attorney time would not have been necessary but for monitoring the cross-claims. (Resp. at 3-4; Resp. Br. at 12-15.) Defendants fail to specify the portions of the billing records attributable to monitoring of the dispute. Plaintiffs argue that it was necessary for counsel to review and monitor the pleadings and motions, and that much of the information they used when preparing for trial and for their summary judgment motion against the McKinney landlord was gained from reviewing those pleadings and motions rather than

6

from preparing discovery themselves. (Reply Br. at 4.) Based on these arguments, the Court finds that it was reasonably necessary for counsel to monitor the cross-claims, and that a reduction in the lodestar fee is not required.

6. Delay in Settlement

Defendants argue that since the McKinney and Southlake landlords filed cross-claims and delayed the settlement agreement, they should not be held responsible for the fees incurred by Plaintiffs in monitoring the cross-claims. (Resp. at 4-5.) Plaintiffs respond that the two landlords were released at Snuffers' request and that Snuffers knew when it requested their release that the consent decree would impose liability on Snuffers and the remaining defendants for the unpaid fees associated with fighting the cross-claims. (Reply Br. at 10.) Defendants have provided no authority as to why they should not be held responsible for the fees and have not identified any specific time entries involving work related to the cross-claims.

7. Failure to Segregate

Defendants argue that Plaintiffs did not properly segregate the amount of fees sought by location, therefore making the remaining landlord defendants liable for attorneys' fees incurred in pursuit of claims against other Snuffer's locations. (Resp. at 1-2.) The amended consent decree in this case sets out the remaining real property owners' and managers' liability for attorneys' fees at 14.28%. Plaintiffs correctly assert that the landlord defendants knew about their share of the liability when their counsel signed the consent decree and cannot now claim that the share is unreasonable.

Defendants additionally argue that Plaintiffs' failure to segregate the amount sought by location makes Snuffers liable for fees related to the exterior accessibility variances at the McKinney and Preston Center locations over which it has no obligations. (Resp. at 2.) Plaintiffs respond that many of the issues in this civil rights case are inextricably intertwined because they involve common facts

and derive from the same legal theories, and the landlords and tenants of a specific restaurant location are jointly and severally liable in this case. (Reply Br. at 8.) "A court need not segregate fees when the facts and issues are so closely interwoven" that the time spent on separate claims or against separate defendants cannot reasonably be divided. *See Mota v. Univ. of Tex.*, 261 F.3d 512, 528 (5th Cir. 2001) (citing *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir.1991)). Based on a review of the record and the pleadings, the Court finds that the facts and claims in this case are so closely intertwined that it would be very difficult and time-consuming to segregate the time entries between the different defendants. Even if they could be easily segregated, Defendants do not identify any specific time entries that include time spent on claims based on the exterior accessibility variances. The fees should not be reduced based on this objection.

      8.  <u>Lack of Pre-Suit Notice and Request for Modification</u>

Defendants also request a downward adjustment of the attorneys' fees on grounds that the billing entries began nearly a year prior to the filing of the class action complaint, but there was no attempt by Plaintiffs in their pre-suit preparation to resolve the issues of the class. (Resp. Br. at 12.) According to them, a pre-suit notice and request for modification, while not required by applicable law, would have avoided the attorney's fees now sought. Plaintiffs counter that a pre-suit notice and request for modification would have accomplished nothing because even when they were ready to settle in late 2007, they were notified of internal conflicts between the defendants. (Reply at 2-3.) They assert that the settlement agreement they offered was the same settlement agreement that Defendants signed two years later, and that they agreed to extend the motion to certify twice to provide more time for the resolution of the case. (*Id.*)

"Pre-suit notice is not required to commence suit under the ADA" and the lack of a pre-suit notice "does not compel a reduction of the requested fee award." *Ass'n of Disabled Am. v. Neptune*

8

*Designs, Inc.*, 469 F.3d 1357, 1360 (11th Cir. 2010). However, a court may consider whether the petitioner's failure to ask for or to accept voluntary compliance prior to suit indicates that the petitioner has acted in bad faith, has been unduly litigious, or has caused unnecessary trouble and expense. *Id.* While Defendants now question Plaintiffs insistence to convert this case into a class action, there is no indication that Plaintiffs acted in bad faith, were unduly litigious, or caused unnecessary trouble and expense. Additionally, there is no evidence that Defendants would have settled if Plaintiffs had contacted them pre-suit to resolve the issues. Given the lack of a showing that Plaintiffs acted in bad faith, were unduly litigious, or caused unnecessary trouble and expense, Defendants' request for downward adjustment based on the lack of pre-suit notice and request for modification should be denied.

9. Hourly Rate

Plaintiffs assert that a reasonable hourly rate for Mr. Carden is $400.00, and a reasonable hourly rate for Mr. Bailey in $350.00. To support these assertions, they present affidavits by counsel attesting to their qualification, experience, reputation, and ability. (Mot. App. at 247-52.) While some entries for Mr. Carden were charged at a fee of $450, Plaintiffs have agreed to eliminate the entries charged for a total reduction of $165.00. (Reply Br. at 6.)

Defendants contend that it was unreasonable for Plaintiffs to bill at the premium rate of $400.00, $450.00, and $350.00 for work that could have been performed by clerical staff, legal assistants, associate attorneys or junior partners. (Resp. at 3.) Defendants do not identify the line entries involving work that could have been provided by clerical staff, legal assistants, associate attorneys or junior partners, or an alternative rate for that work, however. Defendants also object that counsel should not have charged $400.00 and $350.00 an hour to monitor cross-claims by the McKinney and Southlake landlords, and should have billed at a rate comparable to the level of

expertise required to monitor the cross-claims. (Resp. Br. at 15.) As discussed, counsel reviewed multiple cross-claims, counter-claims, third party claims, and motions, all dealing with state contract law while monitoring the dispute. These tasks clearly involved legal work, and Defendants have not shown why these tasks should have been billed at a lower rate. Additionally, they do not identify the specific entries to which they object.

**C.    Adjustments to Lodestar**

Defendants seeks downward adjustment of the lodestar fee based on several factors.

1. Degree of Success Obtained

They first argue that Plaintiffs did not achieve "complete relief" for a class of mobility-impaired individuals as they now claim, but only limited success. (Resp. Br. at 10-11.) They assert that the class action addressed a small number of technical construction variances and violations, the parties agreed that no readily achievable modifications were possible at the Greenville location, and after expensive and extensive efforts, only two claims were made but they were ultimately abandoned. (*Id.* at 10-11.) For these reasons, they contend, the lawsuit was unnecessary, a class was never justified, and potential members were not aggrieved by the technical construction variances. (*Id.* at 11.) Plaintiffs point out that the remediation plan in this lawsuit did include things like moving paper towel dispensers so disabled persons could wash their hands. Also, none of the Snuffers restaurants except Snuffers Southlake had correctly designed or placed accessible parking or an accessible route through its front door from any designated accessible parking, there was no accessible seating at all in three of the restaurants, and none were even close to Tile III compliance for public accommodations seventeen years after the Act was passed. (Reply Br. at 2.)

The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Hensley*, 424 U.S. at 436. "A reduced fee award is appropriate if the relief, however

significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. This class action civil rights suit involved sixteen defendants and seven different restaurant locations, of which four were new construction and three were existing facilities under the law. As a result of counsel's efforts, all Snuffers locations have been or will be brought into full compliance with the ADA and the TABA, except the Greenville location. Counsel also achieved a right for each class member to receive $100.00 in damages for a violation of their civil rights. This relief is identical to the relief requested by Plaintiffs when they filed this lawsuit. As pointed out by Plaintiffs, not providing accessible seating or parking for disabled individuals in a public accommodation is not a technical variance but a violation of disability law. Additionally, even if class members have not claimed the monetary damages, and even if no compliance is achievable at the Greenville location, they achieved a substantial portion of the recovery sought by this action. The Supreme Court has recognized that a fee reward need not be reduced simply because the petitioner failed to prevail on every single contention in the lawsuit. *Hensley*, 461 U.S. at 435. Given that the recovery is proportionate to the scope of the litigation as a whole, the lodestar fee is reasonable. Accordingly, the Court should not make a downward adjustment of the lodestar fee.

     2. <u>Other Johnson Factors</u>

Defendants also seeks a downward adjustment based on other *Johnson* factors, such as the time and labor required, preclusion of other employment, and undesirability of the case. (Resp. at 2-3.) The Court has considered each of remaining *Johnson* factors in determining what constitutes reasonable attorney's fees in this action and applied them where appropriate. Many of the *Johnson* factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should therefore not be double-counted. *Jason D. W.*, 158 F.3d at 210. Moreover, some factors deserve more weight than others. *Id.* As noted above, the Supreme Court has held that "the most

critical factor" in determining reasonableness of an attorney's fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436.[3]

      3.  <u>Fees Received from Released Defendants</u>

Defendants also complain that Plaintiffs failed to mention the $45,740.00 in fees from the released defendants. (Resp. Br. at 6.) However, in their fee application and affidavits in support, Plaintiffs subtracted the fees received from the released defendants from the fees sought by counsel.

In sum, Plaintiffs should recover the amount of $226,047.44 in reasonable attorney's fees and costs ($226,513.51 originally requested by Plaintiffs minus $466.07 in agreed deletions).

### III.  CONCLUSION

*Plaintiffs' Motion for Attorneys' Fees* should be **GRANTED,** in part, and Plaintiffs should recover the amount of $226,047.44 in reasonable attorneys fees and costs from Defendants.

**SO RECOMMENDED** on this 23rd day of November, 2010.

                                                  _____
                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiffs do not request an upward adjustment of its fee award, and the Court finds that no adjustment is necessary. *See Johnson*, 488 F.2d at 717-19.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE